JUDGE HARDIN
delivered the opinion oe the court:
This appeal brings for revision before this court a judgment in favor of the appellee, against the appellants, John Corbin and Martha A. Corbin, his wife, and their daughter, Martha Ann Corbin, jr., for the recovery of a house and lot in the city of Lexington, claimed by the appellee by virtue of a deed from Grant Green, as Auditor of Public Accounts, to him and Thomas B. Monroe, dated the 17th day of April, 1861, and of a deed from Monroe and wife to appellee, dated the 25th day of April, 1861.
It appears from the record, that, prior to the year 1833, the lot in controversy was owned and occupied by Solomon Brindley, a free colored man, under a deed from Thomas Bodley, dated the 28th. of December, 1808 ; but that a slave of the late Hon. William T. Barry, named Peter, died in the occupancy of the property in 1833, and, for over two years before his death had occupied it; and, from this and other facts, it seems that Barry claimed the property prior to 1833, but under what evidence of title, and whether before or after the death of Brindley, does not appear. It does appear, however, that Barry and his pei’sonal representative and heirs, by their tenants and agents, continued to claim and occupy the property till the 9th day of January, 1843, when it was sold by the sheriff of Fayette county, under the levy of an execution in favor of the Old Bank of Kentucky, against the administrator and heirs of Thomas L. Barry, and purchased by *299 James March for one hundred and fifty-one dollars, and, by an arrangement between the purchaser and Ann Mitchell, who paid the purchase price, the sheriff, by his deed, dated the 15th day of August, 1846, conveyed the property to the appellant, Martha A. Corbin, sr., for life, and, after her death, the remainder to her daughter, the appellant, Martha A. Corbin, jr., “ for and during her life ; and if she have descendants, then remainder to them in fee simple, but with liberty to her to devise it to whom she pleases; but if she have no descendants living at* her death, then remainder to Hartwell Ethering, in fee simple.” And under this conveyance the appellants occupied and claimed the property, when, on the 1st day of November, 1855, Thomas S. Page, as Auditor of Public. Accounts, and Thomas B. Monroe, an attorney at law, entered into a written contract, which was attested by the Attorney General, and indorsed “ approved ” by the Governor, whereby the Auditor employed Monroe “to sue and recover the said lot, as having escheated to the Commonwealth upon the death of Solomon Brindley, and agreed that all that may be recovered of said lot, the party of the second part shall be entitled to one equal moiety for his compensation for services rendered in the premises.”
This contract contains the further extraordinary stipur lation: “ And it is understood that Mrs. Hickey, widow of William T. Barry, is to have dower, or the amount which would be due her in case the lot had belonged to said Barry.”
Under this contract Monroe instituted and prosecuted a suit in the Fayette circuit court, against said John Cor-bin and wife, but to which Martha Ann Corbin, jr., was not a party.
*300 The suit was brought in the name of the Commonwealth by Thomas B. Baxter, her agent, appointed, by the Auditor to take possession of escheated estates, and resulted in a judgment of eviction, which was affirmed by this court at its December term, 1859.
On the 25th day of November, 1858, and shortly after the judgment of eviction, Monroe, as attorney for the Commonwealth, appears to have contracted with the appellee, Mulligan, for the sale of the property for the sum of four hundred dollars, one half of which was to be paid on the execution of the “title bond,” and “the balance in one year thereafterand Monroe further agreed, “as attorney aforesaid, to deliver possession of said property to said Mulligan, and execute, or have executed, the aforesaid bond within a reasonable time.” No further bond appears to have been given until the 4th day of December, 1860, when the following writing was executed by Monroe :
“ Received December 4th, 1860, of Dennis Mulligan, one hundred dollars, in part payment for a house and lot sold by me to said Mulligan, being the house and lot recovered by Commonwealth of Kentucky from John Corbin. Two hundred dollars have been heretofore paid by Mulligan to me, leaving now due one hundred dollars to complete the whole purchase money of four hundred dollars, on the payment of which balance on the 18th April, 1861, or before, I am to execute to Mulligan a deed to said house and lot.
“ Tiios. B. Monroe, jr.,
“ Agent and Attorney for Commomoealth of Kentucky
Although the appellants remained in possession, it appears that, shortly after the date of Mulligan’s contract with Monroe, an agreement was entered into between him and the appellant, John Corbin, whereby *301 Mulligan “ agreed to let Corbin have the use of the house for a certain time, free of rent, provided Mulligan had the use of an alley running between Corbin and Mulligan,” &c. The writing evidencing this agreement being lost, its precise date is not shown ; but from the evidence we infer it was before the judgment was affirmed in this court.
On the 4th day of April, 1861, the following act of the Legislature was approved by the Governor :
“ Be it enacted by the General Assembly of the Common- - wealth of Kentucky, That whatever interest in a small house and lot on Upper street, in the city of Lexington, which was conveyed in the year 1808 by Thomas Bodley to Solomon Brindley, may rightfully belong to the State by escheat or otherwise, since the death of said Brindley without any known legal heirs, be, and the same is hereby, released to and vested in Martha Ann Corbin for her life, and her daughter Martha Ann absolutely after her said mother’s death.
“ The said property having been bought, in the year 1843, as the property of Wm. T. Barry, claiming and possessed of it after said Brindley’s death, and conveyed, in 1846, to the said mother and daughter as aforesaid, and who have occupied as theirs ever since said sale and conveyance.”
And, on the same day, the following statement appears to have been made, approved, and filed in the Auditor’s Office:

Grant Green, Esq., Auditor:

“ Dear Sir : As agent of the Commonwealth of Kentucky, I have received possession of a certain house and lot in the city of Lexington, mentioned and described in the petition in the Fayette circuit court of Commonwealth vs. Corbin; and have, as agent aforesaid, sold the same *302 to Dennis Mulligan for the sum of four hundred dollars, one half cash and balance payable in April, 1861, taking good security for the payment of the money. April 4, 1861. T. B. Monroe, jr.”
“I approve of the above contract. April 4, 1861.
“ Grant Green, Auditor.”
From the testimony of Monroe, and from that alone, it appears that Green, as Auditor, approved of his report before the Governor approved the act of the Legislature ; and he refers to the fact, that, at the time, he held the office of Secretary of State, and that it was one of the duties of his office to present the acts of the Legislature to the Governor for his approval; and, while this explanation furnishes a sufficient reason why he knew the fact, it strongly conduces to the further conclusion that he purposely deferred an official duty to defeat the will of the Legislature by securing, through the Auditor, a technical advantage to himself and Mulligan.
As, at the time he gave his testimony, he had conveyed to Mulligan his claim to one moiety of the property, by a deed with general warranty, he was not a competent witness for Mulligan; but, although his deposition was excepted to upon this ground, as it does not appear that the exception was afterwards insisted upon, it must be deemed to have been waived, and is not therefore an available objection in this court.
It is insisted, however, for the appellants, that the judgment is erroneous, and should be reversed on several grounds; amongst which are — First. That the sale by Monroe was void, because the law gave him no power to make it; and, secondly. That, notwithstanding the employment of Monroe, and his contract with Mulligan, the act of the Legislature operated to vest the title of the State in the appellants.
*303 1. The employment of Monroe as an attorney at law, with an agreement to compensate him out of the property to be recovered, seems to us to have been authorized by an act providing for the employment of attorneys by the Auditor, approved March 9th, 1854. (1 Revised Statutes, 464.) But that act does not constitute the attorney so specially employed the agent of the State, with power to sell escheated property; nor are we aware of any law conferring such power upon an attorney so appointed. Moreover, the contract between the Auditor and Monroe does not even imply an attempt on the part of the Auditor to confer such authority. The 2d article of chapter 34, Revised Statutes, 1st volume, 459), provides for the appointment by the Auditor of agents for the Commonwealth in each county, who, before entering on the duties of their office, are required to execute bond with security, to be approved by the county courts of their respective counties; and these agents, when so appointed and qualified, may, under written directions of the Auditor, sell property of the State which may have come to their possession; but although the name of Baxter as the agent for Fayette county was used in the prosecution of the suit of the Commonwealth to recover the property, he does not appear to have acquired the possession, nor to have been a party to the sale to Mulligan, nor-even to have sanctioned it in any manner.
We are of the opinion, therefore, that the transactions between Monroe and the appellee were without authority of law, so far as the rights of the State were concerned, and at most only operated to transfer to the latter the benefit of Monroe’s contract as attorney. Nor, for the reasons we have indicated, did the approval of the Auditor increase or enlarge the rights of Mulligan so acquired.
*304 2. Regarding Mulligan as the assignee and beneficiary merely of the contract of the Auditor with Monroe, we have next to consider what rights Monroe really had under his contract, and how they were affected by the act of the Legislature.
As the possession of the property was never acquired by the agent of the State, nor by Monroe, or even Mulligan, unless he did so constructively by his agreement with John Corbin, which was not so far regarded as to be relied on to bar the trial of the cause in the court of appeals ; and as no suit was prosecuted against Martha A. Corbin, jr., to divest her of her title in remainder under the sheriff’s deed, it may well be doubted whether Monroe, under his contract, was entitled to any compensation.
But however this may be, we are of the opinion that, as the title remained in the State when the act of the Legislature was passed, of which Monroe, through his official position, must be presumed to have had notice, and as the act had been approved and became a matter of record in the office of the Secretary of State, although not in force when the deeds were accepted under which the appellee claims the property, they must be regarded as having been accepted with notice of the legislative act, which, at the expiration of sixty days from its passage, operated to vest in the appellants whatever title the State had acquired by the death of Solomon Brindley.
In coming to this conclusion, we have not overlooked the objection taken for the appellee that the act of the Legislature was inhibited by the constitution, as impairing the obligation of a contract.
If the State, through her officers, had legally undertaken to compensate Monroe for his services, in the contingency of his recovering the possession of the proper *305 ty, by conveying a moiety of it to him, this contingent and prospective contract did not, in law or equity, vest the title in him. Construed in its aspect most favorable to him, it only conferred on him the right, whenever he should fully comply with his part of the agreement, to demand a specific execution, or a just reparation for the failure of the Commonwealth to execute her contract.
The power of the Legislature to grant to individuals the title of the State to lands was expressly recognized by this court in the case of Patterson vs. Trabue (3 J. J. Marshall, 598). That the ends of simple justice demanded the exercise of this power, is apparent from the contract itself by which Monroe was employed; for the right of dower therein reserved for the widow of Barry was . wholly inconsistent with a right in the State to the property by escheat, and its recognition virtually conceded the validity of the appellant’s title. There was still another consideration, which, although it failed to restrain the officers and agents of the State from proceeding to recover the property, was, no doubt, a controlling influence, and justly so, with the Legislature. The execution against Barry’s estate under which the property was purchased in 1843 was in favor of the old Bank of Kentucky. It is part of the financial history of the State, and must be taken as judicially known, that in 1843 said ' institution was mainly owned by the State, and under its management and control. The Commonwealth having thus derived the benefit of the sheriff’s sale, it was but an act of justice in the Legislature to give validity to the sale by perfecting and securing the title of the purchasers.
Wherefore (Judge Robertson not sitting), the judgment is reversed, and the cause remanded, with directions to dismiss the action and adjudge to the appellants their costs.